Case number 090840, Peoples v. Alberto Aguilar. For the appellant. Both up. Good morning, Your Honors. David Holland from the State Appellate Defender's Office, representing Alberto Aguilar. State? Assistant State's Attorney Brian Hodes, representing the People, Your Honor. And why were we late today? That was my fault. I apologize. I thought that it was at 10.30 because I guess that was when the prior one was or something. Well, it's very bad form. I won't say it's not. I'm very sorry. Because normally, I used to work in that office, and I don't recall ever getting to work at 9.30 in the morning. If I did, my supervisor would have sent me home for the day and fired me and beat me with a baseball bat and all sorts of other terrible things, and deservedly so. So avoid that in the future, Mr. Hodes. Yes, I will. All right. Both sides have 15 minutes. It's an interesting case. We've had supplemental briefing in this case. Thank you for filing those at our request. It's still behoosal to get to your strongest point first. So anytime you're ready, Mr. Holland. Thank you, Your Honor. If I may reserve a couple minutes for rebuttal. Certainly. Counsel, and may it please the Court, there are three issues before the Court this morning. The first issue is whether the amended version of the aggravated unlawful use of the weapons statute applies to this case. And that's the first issue in the supplemental briefing this Court ordered last month. The second issue is the constitutionality of Illinois' aggravated unlawful use of a weapons statute. That's the first issue in the original briefs. And the final issue is the constitutionality of the unlawful use of a weapons statute that prohibits those under the age of 18 from possessing handguns. I intend to speak on the first two issues and rest on my brief for the final issue. But I would be happy to entertain any questions on the final issue. The events that gave rise to these convictions occurred on June 12th of 2008. And Mr. Aguilar was convicted in part for possessing a firearm when he was not on his land or abode or place of business. It is undisputed that at the time of the possession, he was standing in his friend's backyard. In August of 2009, the Illinois legislature amended the statute to also exempt from criminal conduct possession that occurred when one is an invitee onto another's legal dwelling or land. There is an established canon of statutory construction that holds that if- I'm sorry, I'm going to interrupt you.     I am here to ask a question. You may have to ask it, though. There's something else. Is there not with his permission or their permission? What does it refer to? It refers to permission to have the gun. Okay. And he did not have even had a gun on the property, correct? That's correct. The defense theory of the case is that he did not have the gun. The State's argument rests upon the defense case in terms of Mr. Diaz testifying that he did not see Mr. Aguilar with a gun. It's my assertion today that that's not proof beyond a reasonable doubt of one of the elements of the offense. Because this exception to the statute, it's not an affirmative offense. It's much like the – it's the same as the other exceptions within the statute that require the State to negate that element beyond a reasonable doubt. And here, the testimony, I didn't see Mr. Aguilar with a gun. In any light, it's not proof beyond a reasonable doubt that there wasn't permission given at some time for Mr. Aguilar to possess this firearm. I think this is – a similar situation would be if the State had to prove a FOID card element of this statute. In those situations, for example, even if the defendant were to say, I didn't have the gun, I've never touched a gun in my life, that wouldn't relieve the State from their burden of introducing evidence, be it their records or testimony, that that defendant was not registered under the FOID Card Act. But going just nettily into what you started with before I cut you off about the – with their permission, how would the State do that in this case? So FOID card, they could call a policeman and say, I checked on a computer, he didn't have one. They could call somebody from Springfield and say, I'm in charge of the master list. There's no FOID card administered to this defendant. In this case, your argument is the State's attorney would have had to ask on cross-examination the owner of the property, which would say on direct set, my friend was there, I never saw him with a gun, which I would suggest anybody could infer them, since I never saw him with a gun, I certainly didn't get permission with it. But taking your argument that that's wrong, that it's up to the State to ask that question, nobody would have asked that question at the time of this trial, because the offense had occurred prior to the amendment, correct? That's correct. So which statute should we proceed on? I would ask this Court to proceed on the amended statute. And I agree, this issue wasn't raised, and I stand here grateful that we're allowed to brief this issue. But I agree, this issue was not before the trial court. However, the record is silent on the permission aspect. So I would say that since, in a sense, that element would be a sufficiency of the evidence argument, I would ask this Court to review the record as it is. And I would assert that because the record doesn't prove beyond a reasonable doubt that these two friends, who had been friends since grammar school, because the record is silent as to whether there was permission given, I would assert that the State had not met their burden off of this record to prove beyond a reasonable doubt the negation of that exception to the statute. But again, it goes back to which statute? They cite, the State cites in the supplemental brief, as to which, in their initial brief, they go along with you. They actually cite the amended statute, even though it didn't apply. That's an argument that it could not apply. So as to that argument, then, they cite Atkins and Glisson and Rink. And so what's your strongest case? You start at the end and say when there's an amendment as a result of a case, we could presume or take that certainly into consideration in determining whether or not it should be applied. Right? That's correct. And in a sense, I don't disagree with the State's explanation of Atkins or Glisson or the statute on statutes. My argument is that this is not a situation where this Court needs to go down that procedural substantive dichotomy because this is a clarification of the law, not a substantive change. And our Illinois Supreme Court has noted that if an amendment is passed to a statute, that amendment can be indicative of legislative intent. And, of course, the circumstances surrounding the passage of the amendment can be further indicative of the legislative intent. And I think in this case, I think there are two compelling reasons why these amendments are clarifications, not substantive changes in the law. The first reason is that the Illinois legislature said so. Representative John Bradley, when he introduced these amendments to the floor of the House, he stated that this legislation would not be any more than we intended it to be. He stated this legislation would simply clear up the definition so that someone that possessed a firearm as an invitee would not be subject to the unlawful use statute. When these amendments reached the Illinois Senate, they were introduced as clarifying the language and the original intent of the bill. And these amendments passed two days later unanimously. So I think there's a clear indication from the legislature in terms of the legislative debates. And the second compelling reason is that these amendments were passed on the heels of a faulty judicial construction of the statute in People v. Price. In People v. Price, the defendant was convicted for possessing a firearm when he was a guest at his sister's home. And Representative Bradley introduced these amendments as saying that that conviction shouldn't have occurred because he was lawfully possessing the firearm otherwise. Under this doctrine of statutory construction regarding clarifications, it's held that if an amendment contradicts a recent interpretation of a judicial construction, it's an indication of a clarification of the legislature's original intent. So I would say here that 18 months after the Price court decision, the legislature moved to clarify that this sort of possession is actually not criminal but is contemplated to be lawful under the intent of this statute. I misspoke when I started saying that the state relies on a rink. Actually, your argument is the amendments that is found in a rink. So I kind of took away your case from you. But that's the argument you find in a rink. When there's an amendment shortly after an act, you can presume that they wanted to pass it with the act. That's a 1983 case. That's correct. But then in 2003, the Supreme Court came down to Kavanaugh where they adopted Landgraf as to retroactively applying statutes. And it says the Landgraf set forth a multiple part test to determine retroactivity. The first step is to determine whether the legislature has clearly indicated the temporal reach of the amended statute. This court in Kavanaugh determined that as long as Section 4 of the Statute on Statutes is in effect, which it is, an Illinois court will never need to go beyond Step 1. So the question, according to our Kavanaugh, is did the legislature indicate the temporal reach? And in this case, while they do talk in the debates about what they wanted to do, it says this law becomes effective when it becomes in effect and when it was passed. So if you look at the case in Atkins, which actually the statute in Atkins was written in a way I'd suggest to assist defendants by saying burglary is a lesser included offense of residential burglary. However, in that case, it's a bench trial where the judge said, I don't believe the resident's burglary, but I'm going to find them guilty of burglary. And the Illinois Supreme Court agreed with this court, saying no, since that statute was changed after the effect of the burglary one year later, you look at the Public Act's effective date, which included burglary as a lesser included. That was after the offense occurred. Therefore, when the act was passed, when the burglary occurred, rather, burglary was not a lesser included, and therefore he could not be found guilty. That helped that particular defendant, but I'm sure it hurt many other defendants' cases. So that's what you look at. So the effective date of that case in Atkins was in June, one year after the other. And if you look at GLSEN, the state legislature decriminalized, or at least repealed, an act which held that a possession with intent meth or ingredients for meth is criminal. They said, no, that's a bad act, and they got rid of it. And yet the Supreme Court in GLSEN affirmed a conviction of a guy who got convicted of this offense that clearly the legislature determined that it shouldn't be an offense at all, and they affirmed his conviction. So it's really harsh. So why should we follow RINC instead of Atkins and GLSEN? I would ask this court to follow RINC and also inmate detention of Lieberman is another case that discusses this doctrine of judicial construction of the statute. But I think they can be read in harmony in that throughout the past decade, the Illinois Supreme Court, they have, as you mentioned, they have discussed the Landgraf test and the statute on statutes. At the same time, they have also reaffirmed this doctrine of statutory construction. And in those cases, GLSEN and Atkins, they made no mention of this doctrine. And I don't think through silence they intended to overrule this entire doctrine of construction. And I think in terms of the Atkins case, in 1994, in People v. Childress, the Illinois Supreme Court held that burglary was not a lesser included of residential burglary. So there wasn't a controversy as to that aspect. And this controversy arose, I believe, over whether a garage would be part of a dwelling. So there was a controversy there. But the legislature then moved, as Your Honor noted, to hold that burglary was a lesser included of residential burglary. So I think there wasn't a controversy that needed clarification. I think in that sense, if the legislature had then moved to say, oh, wait a second, a garage is part of an attached dwelling, then in that sense I think then perhaps it would have been a clarification. Well, let's assume you're right and that we agree with you that we apply the new act as amended. And your argument then right from the beginning was if we do that, it was the state's burden to show that the owner of the property who testified in this manner did not give permission for the defendant to have a gun. And you argue it's the insufficient record to show that that occurred, right? Yes. Well, what do you have on McDonald-Heller at all, the idea of the Second Amendment? You covered that in there. Is that the one you said you didn't want to cover? I'll certainly speak on that. I was intending to rest on my briefs for the under-18 argument. Okay, right. But how about McDonald-Heller then? Is it open season to carry guns throughout Illinois now? It's certainly not open season. And I think the facts of this case, the fact that he was standing in his neighbor's backyard, I think it only shows that we've moved a little bit closer to what the core right is in Heller. And I think there is a distinction to be made between the Heller-McDonald court's explanation of what the Second Amendment protects and distinguishing that between how it is applied to the facts of Heller-McDonald. Because the very first sentence of the McDonald decision is, two years ago in Heller we held that the Second Amendment protects the right to keep and bear arms for the purpose of self-defense, and we struck down the D.C. law that banned possession of handguns in the home. And I think there's a wealth of discussion in both of those cases that indicate that the Second Amendment doesn't terminate when somebody leaves their front door. In fact, I would say that both the minority and majority opinions in Heller-McDonald, I think, accept that there's a role here for lower courts to be applying the Second Amendment to these sort of situations. And where do you base it on? Well, I think there are several instances in Heller-McDonald where they are. Well, in Heller there certainly are. Scalia goes on at some length. Bear arms means to bear arms. Why not? There's your packet. Walk around. But how about McDonald? And McDonald came down, and Heller, again, applying just to ordinances, I'd suggest, and now McDonald applies to states. Well, I would say that the back and forth between the majority and dissenting opinions in McDonald, of course the dissenting opinions in McDonald would not have incorporated the Second Amendment at all, but Justice Stevens does go on to say that if it is to be incorporated, it should have been only incorporated as to the facts of Heller, as to only applied within the home. And the majority rejected that interpretation as, quote, watered down. So I think in that sense there has to be, for that dialogue to make sense, that it's proceeding on the assumption that the Second Amendment exists outside of the home, that those protections. Counsel, this is the question that this case presents to me. Does the Second Amendment create the right to keep and bear arms away from the home? What's your answer to that question? My answer is yes. And what do you base that on? And cite me to the case in the case. Well, I would say that the numerous times that they say, we find that the Second Amendment guarantees an individual right to possess and carry weapons in case of confrontation, in case of self-defense, I don't think the state would argue that the need for self-defense only arises within the home. As I mentioned, the contrast between the minority and majority opinions in McDonald, the Heller decision when they discussed their historical analysis of the Second Amendment, they cited to non-versus state where the Georgia Supreme Court struck down a ban on the open carry of pistols. The Heller decision described that opinion as perfectly capturing the purposes of the operative and preparatory clauses of the Second Amendment. And also the language that when they described that the rights are most notable within the home or the right for the Second Amendment is most acute within the home. And I think for those phrases to make sense, they would have to exist outside the home for some sort of degree of acuity here. And so I think the next question for this court should be, if the government is going to burden this right, how much can they burden it and is it justified? And so far the state has taken the stance that they don't have any burden at all to justify why law-abiding Illinois citizens can't carry operable firearms outside the home. And I would assert that under any of the emerging frameworks that are coming out regarding Second Amendment analysis, I would argue that this particular statute doesn't satisfy any of these models. And I mean by that that the state hasn't argued that there's any sort of historical prohibition on carrying firearms outside the home because there's not. The state hasn't argued that the entire state of Illinois is such a sensitive place that they could prohibit firearm possession outside the home. And the state hasn't argued that this statute is sufficiently tailored under any form of heightened scrutiny. And I would submit that this particular statute is not tailored outside the home or one's place of business. It is an outright prohibition. The ultimate holding in Helder, though, was that the phraseology which unfortunately I have in front of me regards the home. So we hold the blah, blah, blah, that ordinances which prevent the possession of handguns in a home for self-defense are a violative of the Second Amendment. And McDonald refers to that holding specifically several times as well as being within the home. Could you cite any language in McDonald that would lead you to believe that the majority, it's the same majority as in Helder, still think it's a good idea for people to walk around with handguns outside their home? Again, I would refer to even the very first sentence of McDonald saying we held the right to bear arms for the purpose of self-defense and we struck down this law. In terms of, I can't propose to know what Justice Scalia would want in this situation, but I'm certainly not arguing that this is opening up some world of mayhem where the state would not be able to regulate firearm possession. The reason I would say that this statute, this specific statute is not tailored is that there's no registration requirements, there's no background checks, there's no waiting periods, there's no open versus concealed carry, there's no prohibition on certain places, schools, government buildings, that sort of language that came from both Heller and McDonald. So this statute just prohibits the right to possess a firearm? Yes, and carry for purposes of self-defense. Oh, I suggest to you that the, speaking just for myself, that is the issue and has always been the issue in this area of handguns, at least in Cook County. The state statute, as we point out in Dawson by Justice Murphy, is quite open. You're allowed to have a gun in your home. Anybody can have a gun. Outside of Chicago until recently where McDonald struck it down, you can have any kind of a gun, outside of machine guns I suppose, in your home for self-defense as long as you have a FOID card. And nobody's complaining so far about FOID card requirements. However, it does go back to mayhem. As Justice Gallagher points out in Price, that's what we're concerned about. And in this case, did this case arise of the police jumping into a backyard barbecue and hosing around people, get on the wall, get on the fence, want to pat you down, ah-ha, you've got a gun for self-protection in your pocket. No. According to your brief, some friends were at the corner of 26th and Keeler paying tribute to a friend, which I would take it, in my experience, from the gangbangers at 26th and Keeler, where you'd be paying tribute to a friend who had been killed. Is it that? I think that would probably be a reasonable interpretation. Okay. As the Vikings used to set fires on ships and burn women on them so that their chieftains would have somebody to play with in the beyond, gangbangers tend to, apparently at 26th and Keeler, throw bottles at cars passing by and fire handguns in the air. That is mayhem. And it's not your fault. Don't get me wrong. It's not even your client's fault. This is what happened at 26th and Keeler. But I don't know that that is okay. I don't know that when the five people who wrote McDonald and Heller are writing that for 26th and Keeler. Is it okay to stand at 26th and Keeler and fire a handgun in the air? He's not charged with that. Have a gun at 26th and Keeler. That's what we have in front of us today. Certainly, those concerns are absolutely legitimate. In terms of specifically for my client, I would note he had never been arrested before. And as you mentioned, this was not part of the charge. And the state hasn't argued that Mr. Aguilar doesn't have standing to challenge this law. But certainly, those concerns are legitimate. And I think the McDonald decision, when it held this right to be fundamental, it said that because it's fundamental, it necessarily will limit. But it will in no way eliminate the government's ability to regulate firearm possession. And as this court is aware, even the immediate fallback for all of these unlawful use of weapon statutes is the Firearm Owner Identification Card Act. It is unlawful for any Illinois citizen to possess any firearm or any ammunition in this state without being first registered with the government. So this particular statute, it is unconstitutional in that it fully prescribes handgun possession outside of the home. And I think that this argument that Mr. Aguilar is advancing is not as extreme as it would seem because really the majority of states in this country, the vast majority, allow some sort of carry outside the home. And that sort of carry is highly regulated. So the fact that this very specific statute is unconstitutional would only move Illinois slightly closer to the majority on this issue. Why don't you save some time for reply and we'll hear from the state. Thank you, Your Honor. Mr. Hodes. Thank you. I, too, would like to start with discussing the retroactivity issue with respect to the amended statute. The law on this is very simple. If the legislature wanted the statute to be retroactive, it would have said so. It knew that otherwise the statute on statutes would kick in and then there would be a question of whether it was substantive or procedural. If it was substantive, as it is here, it would not be retroactive. Defendant argues, tries to basically evade that issue by claiming that there's a different rule that comes in because it was a clarification. That, I think that's based on, actually I know it's based on an oversimplification and frankly a misreading of the legislative history surrounding this amendment, which created an exception. In fact, in two parts. First of all, Representative Bradley's, what they quote is Representative Bradley's pitch when he amended the statute to add the invitee language, not the permission language. When he made that pitch, several legislators, most of whom I believe are from Cook County, vehemently disagreed with him that it was in any way, shape, or form a clarification. I think that the reason that he wanted to make it a clarification, if you read Price, is that he was the person who set what an abode was. And in Price, the court quotes him for an explanation of abode, which clearly indicates that an abode is what it normally is, which is your home. It's not wherever you hang your hat that night. After that amendment passed through the Assembly, excuse me, the Illinois House, in the Senate, Senator Harmon offered an amendment on May 19th, 2009 that included the permission requirement, which is as it currently stands. He pointed out that that was made at the request of the bill's primary Senate proponent, Senator Hayne of the National Rifle Association. This version, not the one that Representative Bradley tried to characterize as a, quote, clarification, was the one that the House accepted. In fact, when it got back to the House, at one point during that discussion and Representative Bradley was advocating in its favor, he characterized it as a significant change over his initial version. In fact, the legislators who criticized him at the initial hearing when he brought in the inviting thing were concerned with the lack of the permission element. When it was approved on August 25th, 2009, it became effective on that date. It was a substantive change. It has no bearing on this particular case because defendant's conduct occurred well before that. I would, the statute on statutes and the case law interpreting it extends to criminal and civil cases, as the Court noted earlier. Glisson, et cetera, said that, yes, occasionally things are decriminalized, but even in those instances, even in those instances, the new law will not apply retroactively and cannot be applied retroactively unless the legislature says so explicitly. And they didn't. I guess I'll move on to the Second Amendment issue now. Okay. As this Court noted in Dawson, which I believe was obviously correctly decided, unlike as the defendant argued otherwise, in the response to our motion to file supplemental authority, what Heller recognized, as momentous as Heller was, it was equally limited. And it was limited in that it said it dealt with a civil case where somebody said, I want to have a gun in my house, and the D.C. regulation said you can't have one. You can't have permission. He won that case, and the Court recognized a very, very limited right to have an operable firearm for otherwise law-abiding citizens in the home for purposes of self-defense. That was it. McDonald didn't extend that right, at least not the nature of the right. What it did was it made it applicable against the states, or to the states, I should say, through the doctrine of incorporation because the Second Amendment was one of the only amendments that had yet to be incorporated. It said nothing that made that, that reconfigured that right. In fact, it's actually kind of more confusing because it's a plurality decision, not a majority decision. I mean, they all agree. It was a plurality because Justice Thomas did what the counsels asked us to do. Right. That it should be applied to the immunities clause, privileges and immunities clause, I think it was. So it wasn't like there's a break in those five. No, no, no. I don't mean it that way. In terms of what it's saying in dicta about the right, because the right wasn't the issue before it. The right being the right to, you know, is there a Second Amendment right to individuals? That wasn't what McDonald was focused on. What McDonald was focused on was the incorporation issue. They said it at the outset and they said it at the end. Along the way, they dealt with various complaints about the possibility that that could be construed in a way that might offend criminal statutes. Because, after all, what that case was, just as in Heller, was a case where somebody brought an affirmative case seeking to get, seeking permission to have a weapon. It wasn't a case where someone was violating the law. And then they said, I have this Second Amendment right that wasn't recognized at the time. Would it matter? Suppose that Mr. Heller or Mr. McDonald, instead of being nice law-abiding citizens, had been not quite as law-abiding, more along the lines of Mr. Aguilar. They'd been arrested for this. Suppose Mr. Aguilar had been arrested in the city of Chicago and was charged under the city ordinance in his home. Wouldn't we have to strike it down? In his home, you would. But I think there would still, but there's another aspect of it that you might not. I mean, there's the law-abiding aspect and then there's, if we're going to get into the, whether the Second Amendment is violated as to him as opposed to the statute. I was going to talk about the statute first. But as to Aguilar, he's not, he's a minor at that point. And I think that sort of exclusion has never been attacked on Second Amendment grounds. The only cases that I found that addressed it said that it was still proper to regulate guns and to prohibit minors from having them except under very certain circumstances. If they're, you know, going to a shooting competition, they can bring their. If they're going hunting. Yes, yeah. I mean, it's a big deal. It's not a big deal in Cook County, but it's a big deal, I can tell you, everywhere. In 101 counties, it's a very big deal. Right, and that's. They don't mind their kids having guns. And that's to some extent what animated the change in the legislation. I mean, that's where that amendment came from. I should bracket that out. That's not why I'm talking about that. Counsel, would I be wrong to interpret Heller to mean that it's just against the law to carry firearms in sensitive places such as schools and government buildings? You know, they limit it, where you could carry these guns. They don't say anything about backyards or public streets. The passage you are referring to in Heller has been quoted by several courts, and Heller, I believe, makes explicit that that is a non-exhaustive list. In other words, we're going to name these offhand as places. That doesn't mean that's all there are. That means these are, you know, particularly obvious cases. What do you prohibit in the statute that's under review today? Are there some specific places where you can't carry weapons, or does it bar the carrying of weapons everywhere? It is not a total ban. In fact, when the statute was initially addressed before the advent of Heller MacDonald and the federal recognition of individual right to bear arms, it was addressed under the Illinois Constitution's clause talking about the right to bear arms, and they pointed out that the statute had a number of ‑‑ it was not a total ban as the statutes in Heller MacDonald. Read me the language in the statute that limits the places where you can carry a weapon. In terms of reading it, I might not be able to do right now. I can tell you what it says, though. Well, it says that you can carry a firearm not just in your home but on your property, so it's wider than Heller on that. It's at page 5 of your opening brief. Thank you. I guess I'm suddenly confused. I'm sorry. Do you have your opening brief? Your opening brief. Maybe you have your supplemental brief. No, I've got it in front of me. You've got 24-16. Oh, that part. Okay, yeah. Where does it say you can carry a gun? It says 24-1.61. I mean, it says on or about his person or in a vehicle or concealed about his person except where on his land or in his boat, legal dwelling or fixed place of business, or on the land. This is the part that was added. Probably it didn't apply here. It should not have been quoted in total. Or fixed place of business or on the land of legal dwelling as an invitee with that person's permission and then it specifies the types of weapons. It's also, by the way, a wider definition. I'm sorry. As I recall the evidence, they watched him throwing stones, whatever he's doing, and he walked down the alley. The other guy says watch him. He comes and he sees him drop a gun. What difference does the yard make? He walked down a public alley. The judge found ultimately that he was not guilty on a public property and limited because that was one of the charges. The other charge was a private property and he was actually in the yard when he threw the gun down. I think, to be fair to the defense, at one point he was out of the officer who was surveilling him, basically, the gangs officer, said that he was out of their glimpse. He was out of eyesight for a while. What's going on is, as the statute said, going back to Justice Little's question, so if the defense was correct in order to apply the statute, as you wrote in your initial brief, 161, it would be okay, assuming that the guy who owned the house said, you can have a gun in my backyard. So a vote on his land, you can have a gun in your backyard. You have a gun in your front yard, right? As you read that, do you agree? The way I read that? On your land, you can have a gun in your front yard or your backyard. I would add a number of provisos, which were actually the same provisos that were pointed out by some of the legislators when this was passed, which was they were concerned about who could be an invitee, who had to be the invitee and what proof was required, and basically the legislature said that that would be up to the courts. But in this case – Well, the question is an invitee. There is a huge – there is a – Well, I mean, yes, the other question, though, is whether the person who did the inviting had the authority, since he was likely also a minor, to give someone permission to have a firearm. Well, we don't have – He was also a minor. I'm just – But, I mean, 12-year-olds invite 12-year-olds over all the time. Right. But are they allowed to then say to other 12-year-olds, bring your dad's gun? I don't know. My interpretation of that would be that that would not be legitimate permission. Thank God we don't have that in front of us. Yeah. It's bad enough as it is. But there's no question on your land. So Aguilar is on his friend's land. Therefore, if his friend had given him permission to have a gun, he would have permission to have a gun. Assuming that person – and assuming that – as to that element, I mean, I also think that if you were going to go further up, you'd have – the age thing would come in if we were going to be fact-specific, the age thing both with respect to the invitor and the invitee. Aguilar and the witness – You may wish that invitors would also have to have FYD cards, but that's not the law, or that they have to be over 18. They could have added all that if they wished and they chose not to. So I suggest any invitee can invite anybody over with a gun. I don't know how to be argumentative. They basically punched it on that and said it was up to the courts, was my reading of the legislative history. But if you believe that they are aware of the existence of statute on statutes, which I don't believe for one second, then you could believe that they'll leave it to the courts and somehow will impose a law that they haven't written. And I hope we don't do that. And that's why we're here today, actually. Because the argument from the defense is we're trying to impose – I'll go – go ahead. Anything else? Our position is that the Second Amendment right was not implicated at all because he was not in his – the Second Amendment right, in fact, isn't as wide as the statute is. I think it's become clear. But the Second Amendment right, as it's been defined by every court so far, has not touched on the circumstances present. And a lot of courts have interpreted it. In fact, a lot of – I mean, most of the litigation – in fact, the litigation that was touched on in the defendant's supplemental brief actually involves status – what I would call status cases, which are, you know, why can't I have a gun just because I'm a convicted felon? So they didn't really address the place issue. Even though that was a fact, it wasn't the – And that's why they're arguing it. Right, right. So I'm just – I just want to point out that even though those courts engaged in some sort of an interest balance or non-interest balance in your constitutional scrutiny, that scrutiny doesn't even need to apply here. Well, couldn't one of the reasons be, though, that in 48 of our 50 states, you're allowed to have a gun anywhere within the state, generally? Only Wisconsin and Illinois choose to say where you can have a gun and not have a gun. Actually, we say – yeah, we start with you can't have a gun except within your home. Everybody else starts with you can't have a gun anywhere in our state. So why would another court raise the issue of CITES since no other state cares about CITES? Actually, those were mostly federal cases, though, so the CITES thing wasn't an issue, except for the – I think there was one case that involved – it did involve the site. It had to do with National Park, the Virginia case. And they just passed an act to allow guns in national parks to – national parks. There is a California case that involved a site, though, although in a slightly different twist. The Yarborough case, which I believe we referenced in our supplemental brief. He was on private property, and they basically – but because the way the statute was written, the issue was really not whether he was on private property. It was whether it was accessible to a public way, and it found that he was properly convicted under their – I don't know what I'd call it – Anything else, Mr. Holmes? I just want to point out one more thing. I'm sorry. We did cite a number of cases that talked about a rationale for having this, assuming there is a constitutional issue here. And those cases are all the ones that construed the – that found the – the wealth of Illinois cases that have already found the statute constitutional. Under Illinois law and under federal law, mostly – primarily under Illinois law, which does recognize the right to bear arms, albeit with a concurrent – with the proviso that there's a police power at issue. And although those were under a different standard, those cases set forth a number of compelling reasons why, assuming for the purposes of argument, this legislation would survive scrutiny. And the level of scrutiny, I would suggest, if we have to go down that road would be an immediate scrutiny, because that's the level of scrutiny that the courts throughout the country have applied when they have looked at this issue. I guess with that, if there are no further questions. Thank you, Mr. Holland. I would thank you. And, again, I apologize. Mr. Holland, briefly. Just a couple very brief points. The state is attempting to parse the language of the legislative debates, but it seems several instances when it says this is a clarification. But even if you were to parse that language to be not a clarification, I don't think that would get you around the fact that this came on the heels of people versus price. And in terms of the constitutional issue here, Justice Neville, when you mentioned that the language in both Heller and McDonald stated that this is not going to eliminate all gun possession laws, you're still going to be allowed to prescribe possession in sensitive places, that necessarily means that an entire state wouldn't be deemed to be a sensitive place. And I just wanted to back up for just one second. I did want to mention this Court is aware that in terms of the statutory construction issue, if there is an ambiguity in this statute, which I think there is because this could be construed as being lawful or criminal conduct, if there's ambiguity, the statute should be construed in favor of Mr. Aguilar under the rule of lenity. And briefly in response to the opposing counsel's side of Yarborough out of California, even California allows for concealed carry. So that challenge is significantly different. We're here, I would assert that this statute is not tailored in any manner. So in sum, I would ask that this Court, sorry. Do you agree with him that we should use, if we get to the constitutionality question, intermediate scrutiny? Do you agree with that? I would ask that this Court review the statute under strict scrutiny, but I think that might be an academic point in that I am arguing that this is not tailored in any manner. So granted, courts have been using intermediate scrutiny to examine these laws. So certainly under intermediate scrutiny, you might need less tailoring. But I'm asserting that this is not, outside of the home or the business, this is not tailored in any manner. So I'm arguing that this wouldn't pass any sort of constitutional muster. I would ask this Court to reverse Aguilar's first conviction on statutory grounds. And in terms of the constitutional questions, I would ask this Court find that the state has a burden to justify these laws, and it has not met that burden. Thank you very much. Thank you. This case is taken under advisement. This Court will be in recess.